[Cite as *State ex rel. Extendicare Health Servs., Inc. v. Ryan*, 126 Ohio St.3d 12, 2010-Ohio-2452.]

THE STATE EX REL. EXTENDICARE HEALTH SERVICES, INC. *v*. RYAN, ADMR.

[Cite as *State ex rel. Extendicare Health Servs., Inc. v. Ryan*,

126 Ohio St.3d 12, 2010-Ohio-2452.]

*Workers' compensation — R.C. 4123.512(H) — Limited writ of mandamus granted — Employer entitled to reimbursement for medical-bill payments for disallowed conditions that it paid before it opted out of the reimbursement program.*

(No. 2009-0922 — Submitted March 30, 2010 — Decided June 8, 2010.)

IN MANDAMUS.

_____

**Per Curiam**.

**{¶ 1}** Relator, Extendicare Health Services, Inc., is a self-insured employer. At issue is its request for reimbursement from the state surplus fund for compensation and medical benefits paid to or on behalf of Kimberly Owings from April 1, 2004, through June 30, 2007. Respondent, Marsha Ryan, the administrator of the Bureau of Workers' Compensation, denied that request, and Extendicare has responded with this original action in mandamus.

**{¶ 2}** Owings's 2002 workers' compensation claim was originally allowed for "sprain right shoulder; right rotator cuff syndrome; right shoulder bicipital tendonitis." Extendicare began paying temporary total disability compensation shortly after the claim was allowed, but moved to terminate that compensation in August 2003, claiming that Owings had reached maximum medical improvement ("MMI"). The Industrial Commission of Ohio found that Owings had not attained MMI and denied the motion.

**{¶ 3}** In February 2004, Extendicare filed another motion to terminate temporary total disability compensation, again alleging that Owings had reached

MMI. Shortly thereafter, Owings asked the commission to additionally allow three conditions: "impingement of the right shoulder, fraying of the right labrum, and aggravation of pre-existing arthritis right shoulder."

{¶ 4} On April 1, 2004, a district hearing officer granted Owings's motion and denied Extendicare's. On July 20, 2004, a staff hearing officer affirmed and, in continuing temporary total disability compensation, found that "[t]he injured worker has not reached [MMI] because of the newly allowed conditions in this order and cannot physically return to her former position of employment." Further appeal was refused.

{¶ 5} Extendicare filed its notice of appeal to the Franklin County Common Pleas Court on October 7, 2004. On November 5, 2004, Owings filed her required R.C. 4123.512(D) complaint, alleging a right to participate in the workers' compensation system for the three contested conditions. She dismissed that complaint on October 12, 2005. She refiled her complaint on September 25, 2006, but dismissed it again on October 1, 2007. This second voluntary dismissal prompted Extendicare's motion for judgment as a matter of law. The court granted Extendicare's motion and on May 22, 2008, issued a judgment entry that specifically denied Owings's right to participate for the three disputed conditions.

{¶ 6} During the nearly four years of litigation, Extendicare, pursuant to R.C. 4123.512 (H), continued to pay temporary total disability compensation and medical expenses as ordered by the commission or bureau. During this litigation, Extendicare also, on July 1, 2007, exercised its statutory right under that section to opt out of the surplus-fund reimbursement program. After the litigation ended in Extendicare's favor, it sought surplus-fund reimbursement from April 1, 2004 (the date of the order by the district hearing officer allowing additional conditions and continuing temporary total disability compensation), to June 30, 2007 (Extendicare's last day in the reimbursement program).

**{¶ 7}** The bureau's self-insured department denied all reimbursement because Extendicare had opted out of the reimbursement program. The self-insured review panel, on appeal, affirmed that reasoning and added:

**{¶ 8}** "[T]he judgment entry establishes that Ms. Owings' claim is disallowed for the three additional allowances that were disputed in this claim. However, the claim remains allowed for a number of other conditions * * *. Moreover, [temporary total disability compensation] was being paid for these conditions at the time the disputed conditions were first added to the claim.

**{¶ 9}** "* * *[T]he employer has not established that the reimbursement request relates solely to the disallowed conditions, and not to the other conditions that remain allowed in the claim."

**{¶ 10}** This order was affirmed by the administrator's designee, and Extendicare has now filed a complaint in mandamus in this court.

**{¶ 11}** For obvious reasons, an administrative order that an employer pay compensation or medical expenses is not stayed by the employer's challenge to that order. R.C. 4123.512(H). An employer that ultimately prevails in a "final administrative or judicial action" that "determine[s] that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made" may, however, be entitled to reimbursement for those payments. Id. For a self-insured employer such as Extendicare, reimbursement is generally a dollar-for-dollar recoupment from the workers' compensation surplus fund. *State ex rel. Sysco Food Servs. of Cleveland, Inc. v. Indus. Comm.* (2000), 89 Ohio St.3d 612, 734 N.E.2d 361.

**{¶ 12}** The surplus fund was created pursuant to R.C. 4123.34(B) to, among other things, help maintain the solvency of the larger state insurance fund. Self-insured employers are required to contribute to the surplus fund. R.C. 4123.34(B) and 4123.35(J) and Ohio Adm.Code 4123-17-32. For many years, a self-insured employer's mandatory contribution was directed several ways,

including a portion for disallowed-claim-or-condition reimbursement. Ohio Adm.Code 4123-17-32(D), (E), and (F). In 2006, R.C. 4123.512(H) was amended to permit self-insured employers to opt out of this reimbursement program: "On and after the effective date of the employer's election, * * * the employer shall receive no money or credits from the surplus fund on account of those payments and shall not be required to pay any amounts into the surplus fund on account of this section."

{¶ 13} Extendicare withdrew from the program effective July 1, 2007. Extendicare acknowledges that it cannot be reimbursed for any payments that it made on Owings's claim after it opted out. It asserts, however, that it has a right to recover compensation and benefits paid before that time, while it was still contributing to the program.

{¶ 14} The bureau disagrees. It concedes that the common pleas judgment entry constitutes a final judicial determination that compensation and benefits related to the three disputed conditions should not have been made. The bureau, however, stresses that the judgment entry was issued, and Extendicare's application for reimbursement was filed after Extendicare had opted out. The bureau maintains that regardless of the dates of Extendicare's payments to and on behalf of Owings, a self-insured employer can receive no money from the surplus fund after it has opted out. It alternatively proposes that the temporary total disability compensation that Extendicare paid to Owings during the common pleas litigation was not related to the three disallowed conditions, but was instead related to the claim's originally allowed conditions, which were unaffected by the common pleas court's decision.

{¶ 15} We have been asked to resolve two issues: (1) Does Extendicare's opt-out preclude all reimbursement? and (2) If not, what portion of Extendicare's expenditures are recoupable?

4

**{¶ 16}** Extendicare relies heavily on *State ex rel. First Natl. Supermarkets, Inc. v. Indus. Comm.* (1996), 74 Ohio St.3d 673, 660 N.E.2d 1205. At issue were the handicap reimbursement provisions of R.C. 4123.343. The handicap reimbursement program encourages the hiring of employees with disabilities by reimbursing employers for all or part of certain types of compensation if the worker is later injured on the job. This program, like the reimbursement program currently at issue, was partially funded by mandatory contributions from self-insured employers.

**{¶ 17}** Self-insured First National Supermarkets, Inc., hired a disabled person who was later industrially injured. First National applied for handicap reimbursement and was granted a 70 percent reimbursement. Three years later, the statute was amended to permit, as here, a self-insured employer to opt out of the program. First National remained in the program for the next three and a half years, before opting out as of January 1, 1990.

**{¶ 18}** First National later sought reimbursement for temporary total disability compensation paid from March 31, 1989, through December 7, 1990. The commission denied its application, and First National commenced a mandamus action in the court of appeals. That court held that First National could not be reimbursed for temporary total disability compensation paid after it opted out but that it could recover compensation paid before the opt-out:

**{¶ 19}** "We acknowledge that the commission informed self-insured employers who opted out that the employers needed to file applications for reimbursement prior to the opt-out date or lose the right to reimbursement. However, we are unwilling to make a company's right to reimbursement contingent solely on the date the paperwork is received by the commission." *State ex rel. First Natl. Supermarkets, Inc. v. Indus. Comm.* (May 19, 1994), 10th Dist. No. 93APD08-1203, 1994 WL 198795.

**{¶ 20}** We affirmed that judgment, stressing that First National was "seek[ing] reimbursement for outlays made *before* opt-out – when the employer was still actively participating in the handicap reimbursement program." (Emphasis sic.) *First Natl.*, 74 Ohio St.3d at 674, 660 N.E.2d 1205.

**{¶ 21}** Extendicare asserts that *First Natl.* is directly on point. The bureau tries to distinguish the case by alleging that because First National was granted handicap reimbursement before opting out, it had a vested right to reimbursement before the opt-out. The bureau proposes that Extendicare's right to reimbursement did not vest until the common pleas court denied the additional conditions, which happened after the opt-out.

**{¶ 22}** The bureau reads too much into *First Natl.* The opinion said nothing about vested rights. It instead linked First National's eligibility for reimbursement solely to whether First National was contributing to the fund over the period for which reimbursement was sought.

**{¶ 23}** The bureau's position is problematic from a practical standpoint as well. The reason that the judgment entry did not issue before Extendicare opted out is that Owings prolonged the litigation – and with it her receipt of temporary total disability compensation and medical-bill payments – by twice filing and twice dismissing her complaint. Extendicare appealed the additional allowance to the common pleas court on October 7, 2004 – nearly three years before its eventual opt-out. Owings, as required by R.C. 4123.512(D), filed her complaint on November 5, 2004, but then dismissed it on October 12, 2005. She refiled the complaint on September 25, 2006, and Extendicare timely replied. Owings dismissed her second complaint on October 1, 2007, which prompted Extendicare's motion for judgment as a matter of law. By the time of Owings's second dismissal, however, Extendicare had already opted out.

**{¶ 24}** This sequence of events secured Owings almost four additional years of temporary total disability compensation and medical-bill payments.

Given that the delay in resolution was largely attributable to Owings, we are not convinced that Extendicare should be denied reimbursement of pre-opt-out expenses as a matter of law because Extendicare did not apply sooner or because its right, according to the bureau, did not "vest" sooner.

{¶ 25} Extendicare also points to the language of the statute itself:

{¶ 26} "On and after the effective date of the employer's election [to opt out of the reimbursement program], the self-insuring employer shall pay directly to an employee or to an employee's dependents compensation and benefits under this section * * * and the employer shall receive no money or credits from the surplus fund on account of *those payments* and shall not be required to pay any amounts into the surplus fund on account of this section. The election made under this division is irrevocable." (Emphasis added.) R.C. 4123.512(H).

{¶ 27} Extendicare focuses on the words "those payments" and insists that they can refer only to the payments occurring after the opt-out date – i.e. "those paid directly to an employee on or after the effective date of the employer's election." Extendicare argues that if the General Assembly had desired to foreclose reimbursement for all expenditures both before and after the date of the election to opt out, it would have used the words "any payments."

{¶ 28} The bureau does not address this argument. It instead focuses on the statute's reference to irrevocability and asserts that an employer forever loses the right to any reimbursement once it has elected to opt out. The bureau's interpretation is incorrect. The reference to irrevocability clearly – and only – means that once an employer opts out, it cannot later opt back in.

{¶ 29} We accordingly find that Extendicare's opt-out does not automatically foreclose it from recouping expenditures made to or on behalf of Owings before it opted out of the reimbursement program. But this does not mean that all of Extendicare's pre-opt-out expenditures qualify for reimbursement. Only

those payments that were attributable to the three disputed — but later disallowed — conditions can be reimbursed.

{¶ 30} Extendicare seeks reimbursement of medical expenses as well as temporary total disability compensation. The common pleas court denied Owings's right to participate in the workers' compensation system for the three contested conditions. Thus, payments for medical expenses related to them should not have been made. Extendicare is accordingly entitled to reimbursement for medical-bill payments that were related to any of those three conditions that were paid before it exercised the right to opt out of the reimbursement program.

{¶ 31} Extendicare also seeks reimbursement for temporary total disability compensation that it paid to Owings between April 1, 2004, and June 30, 2007, before its opt-out date. Extendicare argues that Owings's inability to work was due to the three disputed conditions and that their later disallowance meant that temporary total disability compensation should not have been paid.

{¶ 32} This argument does not withstand scrutiny. First, there is no evidence that temporary total disability compensation was based on the three disallowed conditions. The C-84 physician reports on which compensation was based consistently attributed disability to the conditions allowed in the claim initially. Moreover, temporary total disability compensation was *already being paid* to Owings when the additional but disputed conditions were first allowed by the district hearing officer, so it could not have been based on those conditions.

{¶ 33} Extendicare persists, claiming that temporary total disability compensation was implicitly based on the disputed conditions because Owings's originally allowed conditions had reached MMI and could not support temporary total disability compensation. This argument, however, ignores that the allowed conditions were never declared to have reached MMI. To the contrary, the commission denied both of Extendicare's MMI motions.

**{¶ 34}** Extendicare notes that the staff hearing officer's July 20, 2004 order indicated that Owings had not reached MMI "because of the newly allowed conditions in this order." Nevertheless, without a definitive declaration that the original conditions had reached MMI, we do not find that this passage is sufficient to establish that temporary total disability compensation was based on the disputed conditions, particularly given the C-84 evidence of record.

**{¶ 35}** In conclusion, Extendicare is entitled to reimbursement for medical payments made before the July 1, 2007 opt-out date because they related to disallowed conditions. Extendicare is not entitled to reimbursement for temporary total disability compensation paid between April 1, 2004, and July 30, 2007, because that compensation related to her originally allowed conditions rather than the three disallowed conditions.

**{¶ 36}** Accordingly, a writ of mandamus is hereby issued that orders the bureau to vacate its order and to issue a new order that grants Extendicare reimbursement for pre-opt-out medical expenses only.

Limited writ granted.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

Porter, Wright, Morris & Arthur, L.L.P., Darrell R. Shepard, and Robert J. Stalter, for relator.

Richard Cordray, Attorney General, and Elise Porter and Gerald H. Waterman, Assistant Attorneys General, for respondent.

_____